IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


STEVEN W. BAILEY,

Plaintiff ,

vs.                                        Case No. 05-4093

SBC DISABILITY INCOME PLAN,

Defendant.


MEMORANDUM AND ORDER

This ERISA case comes before the court on cross motions for summary judgment.  Plaintiff claims that the decision to deny him long-term disability benefits was arbitrary and capricious, and that defendant failed to follow the terms of its plan by not reinstating him after expiration of his short-term disability benefits.  For the reasons stated below, the court grants summary judgment in favor of the defendant.

**Facts**

Plaintiff began working for the Southwestern Bell Telephone on May 1, 1978, as a clerk and became a Customer Service Technician in 1979.  As a Customer Service Technician plaintiff was required to perform

manual labor including lifting of 150 pounds and climbing ladders and poles over 18 feet tall.  Plaintiff  was working as a Customer Service Technician for Southwestern Bell Telephone L.P. when he was injured in a work-related automobile accident on May 14, 2002.  As a result of those injuries, plaintiff was restricted in both lifting and climbing which prevented him from returning to his occupation as a Customer Services Technician.  Plaintiff timely applied for and received 52 weeks of Short Term Disability benefits from defendant, which expired on January 5, 2004.  Plaintiff makes no claims regarding short term disability benefits in this case.

Plaintiff would not be eligible to receive Long Term Disability benefits until Short Term Disability benefits expired. To be eligible for Long Term Disability Benefits plaintiff had to show that he was "Totally Disabled." To be "Totally Disabled" under the SBC Disability Income Plan, one had to show:

> …that because of Illness or Injury, an Employee is prevented from engaging in any employment for which the employee is qualified or may reasonably become qualified based on education, training, or experience. An employee is considered Totally Disabled if he is incapable of performing the requirements of a job other than one for which the rate of pay is less than 50% of his Basic Wage Rate at the time his Long Term Disability started.

Dk. 42, Exh. E, Sec. 2.26, pg. 9.

Defendant uses an independent third-party claims administrator which manages the day-to-day activities of SBC Medical Absence and Accommodations Resource Team (SMAART). SMAART is not an affiliate of defendant and receives a flat fee for its services.  By letter dated September 30, 2003, SMAART advised plaintiff that his employment with SBC could end on the date his Short-Term Disability benefits expired. Dk. 42, Exh. H.  The letter further advised plaintiff that he may be eligible for long term disability benefits as of January 6, 2004, and invited him fill out and return certain documentation as part of the Long Term Disability application process, which plaintiff did.

In October of 2003, SMAART referred plaintiff's long-term disability claims file for a transferable skills analysis (TSA) review, which was conducted by Deborah Fry. The file included, among other information, the restrictions imposed by plaintiff's treating physician, *i.e.*, that plaintiff was precluded from climbing over eight feet high and from lifting in excess of 50 pounds. The TSA concluded that plaintiff was able to perform the occupations of dispatcher, investigator, product assembler, fuel injection repairer, and tester, electronics.[1] SMAART determined that these types of

---

[1] For purposes of convenience, the court will refer to these as "the five occupations."

3

occupations actually existed in the Topeka market, but did not determine whether there were any open positions within those types of occupations in Topeka.

Although plaintiff's treating physician, Dr. Quick, met with plaintiff in person on several occasions, no representative of the defendant or of SMAART and no specialty-matched physician ever met with plaintiff to review his file or to conduct a physical examination.

By letter dated December 9, 2003, SMAART advised plaintiff that it had completed its review of his eligibility for long-term disability benefits and had denied them.  It found that based on plaintiff's training, education and experience and his restrictions and limitations, he was capable of performing the requirements of the five occupations listed in the TSA for which the rate of pay was more than 50% of his Basic Wage Rate at the time his Long Term Disability would have started.  Plaintiff's long-term disability, assuming entitlement under the Plan, would have started on January 6, 2004, at which time his basic wage rate was $26.38 per hour. Fifty percent of plaintiff 's Basic Wage Rate at that time was $13.19 per hour or $527.75 per week. The Plan does not state whether the basic wage rate should be calculated on a weekly or on an hourly basis.

4

A functional capacity evaluation (FCE) was conducted on plaintiff on January 6, 2004. It concluded that plaintiff had the ability to perform "medium work" for an eight hour day. Plaintiff provided that FCE to SMAART on a date not disclosed in the record.

In March of 2004, plaintiff timely appealed the denial of his claim for Long Term Disability benefits.  In April, SMAART referred plaintiff's file for review by a panel of independent physician advisors, including an orthopedic surgeon, a specialist in physical medicine and rehabilitation, and a pain management specialist. None of these physicians was compensated by defendant. They reviewed, among other documents, a claim log (including the TSA), the FCE, progress notes from various doctors, medical clinics and hospitals ranging from April 9,1987 until February 1, 2004, physical therapy notes, X-rays, CT/MRI results, and other tests and miscellaneous information as identified in their reports.

After reviewing the results of the independent physician advisor review, the SMAART Quality Review Unit upheld the denial of plaintiff 's claim for Long Term Disability benefits. The denial letter, dated May 7, 2004, reviewed the findings by various independent physician advisors and concluded that none of plaintiff's conditions was documented to be so

severe as to prevent plaintiff from performing the duties of "any occupation" with or without reasonable accommodation from January 6, 2004, through the present. Dk. 42, Exh. N.

From January of 2004 to date, plaintiff has performed some work, including a part-time position paying $17 per hour, but has not worked at any occupation in the Topeka Job Market which paid him 50% or more of his weekly Basic Wage Rate.

The SBC Communications Inc. (SBC) Disability Income Plan includes a provision regarding Reemployment of Disability Benefits Recipients, stating:

> ... an individual eligible for Long Term Disability benefits after the expiration of Short Term Disability benefits is considered a former Employee and, as such, has no guarantee of reemployment if no longer Totally Disabled. Notwithstanding the foregoing, effective July 1, 1994, Employees, upon expiration of Short Term Disability benefits, shall be entitled to a maximum reinstatement period of one (1) year to any job the Employee is qualified to perform, provided medical evidence is submitted to the Claim Administrator to substantiate that the Employee is able to return to work.

Dk. 42, Exh. E, p. 12.

An internal job search document was placed in plaintiff's file on June 23, 2003 and was removed on January 4, 2004, a day before his short term disability expired. Plaintiff was not reinstated to any position at

SBC L.P. within one year thereafter. Plaintiff submitted no medical evidence to the claims administrator during that one-year period showing that he was able to work, but the claims administrator had previously reviewed plaintiff's medical records in making its earlier determinations regarding plaintiff's short and long term disability.  This suit followed.

**Scope of review**

"A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see DeGrado v. Jefferson Pilot Financial Ins. Co.*, 451 F .3d 1161, 1167 (10th Cir. 2006).  The language of the plan determines whether the court must apply the arbitrary and capricious standard of review or whether the court must review the determination de novo.

The parties agree that the decision to deny plaintiff long-term disability benefits is to be reviewed under the arbitrary and capricious standard.[2] The court, having reviewed the language of the Plan, agrees.

―――――――――――――

[2]The scope of review of plaintiff's failure to reinstate claim shall be later addressed as necessary.

7

No conflict of interest on the part of the plan administrator has been shown

which would warrant use of the 'sliding scale' analysis. Dk. 50, p. 2.  *See*

*Allison v. Unum Life Ins. Co. of Am.*, 381 F.3d 1015, 1021 (10th Cir. 2004).

Under the arbitrary and capricious standard,[3] defendant's

interpretation of the Plan will stand if it was "reasonable and made in good

faith."  *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1002-03 (10th

Cir. 2004).  Governing cases require that defendant's interpretation must

be:  "(a) as a result of reasoned and principled process (b) consistent with

any prior interpretations by the plan administrator (c) reasonable in light of

any external standards and (d) consistent with the purposes of the plan."

*Id.* (quotation omitted).

A decision is arbitrary and capricious if it is unsupported by

substantial evidence. *Rekstad v. U.S. Bancorp,* 451 F.3d 1114, 1119 (10th

Cir. 2006). 'Substantial evidence is such evidence that a reasonable mind

might accept as adequate to support the conclusion reached by the

[decisionmaker].' *Sandoval v. Aetna Life & Cas. Ins.* Co., 967 F.2d 377,

---

[3]In the ERISA context, "the arbitrary and capricious standard is
equated with the abuse of discretion standard and there is a semantic, not
substantive, difference between the terms*." Buckardt v. Albertson's, Inc.
2007 WL 867193, *4 n.1 (10th Cir.2007), quoting Chambers v. Family
Health Plan Corp.*,100 F.3d 818, 825 n. 1 (10th Cir.1996).

382 (10th Cir.1992)(citations omitted). Substantial evidence requires 'more than a scintilla but less than a preponderance.' *Id*. Substantiality of the evidence is based upon the record as a whole. In determining whether the evidence in support of the administrator's decision is substantial, we must take[ ] into account whatever in the record fairly detracts from its weight." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir.2002) (internal quotation marks omitted).

When reviewing under the arbitrary and capricious standard, "[t]he Administrator['s] decision need not be the only logical one nor even the best one. It need only be sufficiently supported by the facts within [his] knowledge to counter a claim that it was arbitrary and capricious." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir.1999).

In reviewing the denial of benefits under the arbitrary and capricious standard, the court is "limited to the 'administrative record'-the materials compiled by the administrator in the course of making his decision." *Id*. (quotation omitted).

**Motions for summary judgment**

Having ruled on the above preliminaries, the court is prepared to examine the substance of the motions for summary judgment. Federal

Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." ' Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998). In applying this standard, the court must examine the evidence and reasonable inferences therefrom in the light most favorable to the non-moving party. *See Gaylor v. Does*, 105 F.3d 572, 574 (10th Cir. 1997).

**LONG TERM DISABILITY**

Plaintiff raises both procedural and substantive challenges to the denial of his claim for long term disability.

### Procedural failings

Plaintiff first contends that he did not receive a full, fair review of his claim for long term disability payments because the reasons for denial of his claim were not precise enough to permit him to challenge them at the administrative level.

ERISA requires every benefit plan to:

10

>(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

The requirements for a "full and fair review" are often stated as follows:

>[R]eceiving a "full and fair review" requires " 'knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.' " (Citation omitted.)

*Sandoval v. Aetna Life and Casualty Ins. Co.*, 967 F.2d 377, 382 (10th Cir.1992).  An administrator's substantial compliance with § 1133 is sufficient to satisfy the ERISA procedural requirements. *Hickman v. GEM Ins. Co., Inc.*, 299 F.3d 1208, 1215 (10th Cir. 2002).

The initial denial letter dated December 9, 2003 from SMAART states:

>The SBC Disability Income Plan defines disability as follows: "Total Disability" or "Totally Disabled" means, with regard to Long Term Disability, that because of illness or Injury, an Employee is prevented from engaging in any employment for which the Employee is qualified or may reasonably become qualified based on education, training, or experience. An Employee is considered Totally Disabled if he is incapable of

11

Performing the requirements of a job other than one for
which the rate of pay is less than 50% of his Basic Wage
Rate at the time his Long Term Disability started. However,
the Employee is allowed to work and still receive Long Term
Disability Benefits if the job pays less than 50% of the Basic
Wage Rate before his Disability started. The Benefits
payable, when added to the pay the Employee receives for
working, cannot exceed 75 % of his Basic Wage Rate at the
time his Long Term Disability started.  We received a note from Dr.
Quick dated 5/5/03 providing the permanent restrictions and
limitations of no climbing over 8 feet and no lifting greater than 50 lbs.
The SMAART Physician Advisor reviewed the available
information in your file and agreed with Dr. Quick's
assessment of your functionality.  Based on your training, education
and experience and the above restrictions and limitations, a
vocational assessment identified that you should be able to perform
the following occupations:
Dispatcher
Investigator
Product Assembler
Fuel Injection Repair
Tester, Electronics.
These occupations were found to exist in your labor market
with wages greater than 50% of your Basic Wage rate before
your Disability started.

Dk. 42, Exh. J.

This letter meets the statutory and regulatory requirements. To

ensure that the claimant understands the reasons for the claim decision, a

plan administrator must articulate the specific reasons for denying the

claim, but it need not explain to the claimant "the reasoning behind the

reasons." *Militello v. Central States, Se. & Sw. Areas Pension Fund*, 360

F.3d 681, 689 (7th Cir. 2004)(quoting *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996)). The denial letter is written clearly, accurately quotes the Plan language, shows plaintiff how that language was applied in his case, and gives adequate notice of the reasons for the decision reached. Thus despite the fact that the letter fails to include details which would shed light on defendant's interpretive process and omits details regarding its review of the physical, educational or vocational training requirements of the five occupations it states plaintiff can do, the letter provides sufficient explanation to enable plaintiff to formulate his further challenge to the denial.  No more is required.

Plaintiff additionally contends that the May 7, 2004 letter denying his appeal stated different reasons than those stated in the initial denial letter, depriving him of the opportunity to challenge them during the administrative process. That letter states in relevant part:

> The medical information indicated that you have a history of
> a ruptured left patellar tendon, an injury to your left thumb
> and rotator cuff, and arthritis of the carometacarpal joint and
> mteacarpophalandeal (sic) joint of the left thumb. The medical
> information also indicated that you experienced cervical
> mysfascial pain after a motor vehicle accident on May 14,
> 2002 and that you were found to have degenerative disease
> of the cervical and thoracic spine.  After review of the medical
> information by the Unit and the independent physician advisor the
> decision was made to uphold the denial for the appealed period.

The independent physician advisor, an orthopedic surgeon, indicated that you have no focal neurological deficits in the upper and lower extremities bilaterally. He further noted that your ability to do manual labor is documented on the functional capacity evaluation and is confirmed by two consultants.

The independent physician advisor, a specialist in physical medicine and rehabilitation, indicated that there is no documented neurological deficit, and no pathology at the atlanto axial joint which contributes up to 80% of axial rotation and comprises 50% of flexion and extension of the cervical spine. He further noted that you have no documented terminal illness, loss of use of limbs, inability to walk or drive and that the magnetic resonance imaging findings are commonly seen in the working asymptomatic population.

The independent physician advisor, a pain management specialist, indicated that based on the submitted documentation, the functional capacity evaluation as well as the independent medical examination and from a pain management point of view you could return to medium work duty.

Based on your training, education and experience a vocational assessment identified five occupations that you should be able to perform and exist in your labor market with wages greater than 50% of your Basic Wage Rage before your disability started.

Therefore, although some findings are referenced, none are documented to be so severe as to prevent you from performing the duties of any occupation with or without reasonable accommodation from January 6, 2004, through the present.

Dk. 42, Exh. N.

This letter provides more details than did the first about

plaintiff's medical condition, but does not change the fundamental reason

for denial of plaintiff's claim - that plaintiff was able to perform certain jobs which would pay more than 50% of his basic wage rate.  The legal requirements have been met. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1 (1996).

### Substantive failings

Plaintiff additionally challenges the substantive conclusion that he did not meet the Plan's definition of total disability. Plaintiff's contention is two-fold.  First, he contends that the evidence does not support the finding that he was not disabled.  Secondly, he asserts that defendant failed to carry the burden of establishing that jobs were reasonably available in his locality which would allow him to earn more than 50% of his pre-disability earnings.

### Evidence of disability

Plaintiff lodges a multifaceted attack on defendant's finding that plaintiff is not disabled as to "any occupation."  Plaintiff first alleges that no claims administrator, vocational counselor or independent medical examiner ever met personally with him, implying that a review of documents is necessarily inadequate.

There is no obligation under ERISA to obtain an independent

medical examination, especially where the medical evidence provided is insufficient to establish that plaintiff is unable to work. *See Wallace v. Reliance Standard Life Ins. Co.*, 318 F.3d 723, 724 (7th Cir. 2003). The same is true for plaintiff's contention that defendant should have conducted a Physical Residual Functional Capacity assessment and a vocational analysis. *See Block v. Pitney Bowes*, 952 F.2d 1450, 1455 (D.C. Cir.1992) (holding that the plan administrator was not required to consider vocational evidence before making a final eligibility decision); *Marquez-Massas v. Squibb Mfg., Inc.*, 344 F. Supp. 2d 315, 328 (D. Puerto Rico 2004) (alleged failure to make adequate residual functional capacity (RFC) assessment of insured employee and failure to evaluate vocational factors that allegedly showed that insured was unable to perform any type of employment in national economy were required elements of Social Security disability benefits claim that did not control insurer's ERISA decision).  Although the latter two assessments may be required in a Social Security case, this case is governed by the terms of the Plan and the law construing ERISA. No error has been shown by the claims administrator's reliance upon documents in lieu of personal assessments of the plaintiff, or its failure to conduct the assessments desired by plaintiff.

Plaintiff further asserts that the transferable skills analysis (TSA) which defendant conducted was inadequate. Here, plaintiff contends that the physical requirements of the five occupations were not stated and that no analysis was made whether plaintiff could actually perform the five occupations. In response, defendant shows the court that the claims administrator did in fact consider plaintiff's medical restrictions as well as his transferrable skills, in determining that plaintiff was capable of performing the five occupations. Although the physical requirements of the five occupations were not stated in the denial letter, the record shows that they were reviewed by the claims administrator in the process of making its decision.  As the court found above, defendant had no duty to include in its denial letter the level of detail sought by plaintiff.

Plaintiff additionally makes a conclusory assertion that SMAART relied on information outside the administrative record, Dk. 42, p. 12, but no factual support is shown for that assertion.  Plaintiff also contends that the TSA erred in finding that the five occupations would pay more than 50% of his basic wage rate.  Unfortunately, plaintiff relies only upon evidence from plaintiff's vocational expert, which is outside the administrative record and cannot be considered by this court.  Thus no

reversible error in the TSA has been shown.

### Availability of jobs

Plaintiff next contends that the Plan language requires defendant to show that jobs within the five occupations are reasonably available locally.

The Plan language states:

> An Employee is considered Totally Disabled if he is incapable of Performing the requirements of a job other than one for which the rate of pay is less than 50% of his Basic Wage Rate at the time his Long Term Disability started.  However, the Employee is allowed to work and still receive Long Term Disability Benefits if the job pays less than 50% of the Basic Wage Rate before his Disability started.

Dk. 42, Exh. E.

The language of the Plan defines the scope of defendant's duty, if any, relative to the availability of other work.  The court does not find any language in the Plan which imposes a duty upon defendant to show that any jobs for which plaintiff may be suited are actually available in the national or local economy.  Instead, the definition of "total disability" focuses upon plaintiff's capability to perform "a job" or "the job," not upon the job's availability.  (Employee is prevented because of illness or injury from "engaging in any employment for which the Employee is qualified or

may reasonably become qualified based on education, training, or experience"; employee is "incapable of performing the requirements of a job.")

Were this a Social Security case instead of an ERISA case, plaintiff's position may find some support.  In Social Security disability cases, once a plaintiff meets his burden to establish inability to perform his previous work, "the burden shifts to the Secretary to show the reasonable availability of such suitable positions in the geographic area where he lives."  *Keating v. Secretary of Health, Ed. and Welfare of U. S.*, 468 F.2d 788, 790 -791 (10th Cir. 1972), citing *Gardner v. Brian*, 369 F.2d 443 (10th Cir. 1966) and *Kirby v. Gardner*, 369 F.2d 302 (10th Cir. 1966).  That requirement flows from a statutory requirement which has no relevance to the present case, however.  *See* 42 U.S.C. § 423(d)(2); *Conley v. Pitney Bowes*, 176 F.3d 1044, 1050 (8th Cir.1999)(long term disability benefits case holding that the procedure of using vocational experts to show that jobs were available in the national economy that plaintiff was capable of performing "is the special creature of social security ... and has no relevance to [an ERISA benefits] case.")

Defendant reasonably determined, by having a TSA performed,

that plaintiff's job as a Customer Service Technician involved numerous skills on a variety of levels, that such skills would transfer to other occupations within plaintiff's educational and physical limits, and that plaintiff was not therefore unable to perform any job for which he was suited by education, training, or experience.  Plaintiff has not shown that, in fact, he is not suited by education, training, or experience for the occupations suggested by defendant.  *See O'Brien v. Metropolitan Life Ins. Co.*, 968 F.2d 20, 21 (10th Cir.1992).  Although plaintiff notes that the occupations suggested by defendant required training, "the fact that plaintiff would have to learn procedures or information specific to a particular job does not make him ill-suited by education, training, and experience." *Buchanan v. Reliance Standard Life Ins. Co.,* 5 F. Supp. 2d 1172, 1186 (D. Kan.1998).

The court finds that defendant's interpretation of the Plan is reasonable, and that the decisions based upon the Plan have not been shown to be arbitrary or capricious.

**FAILURE TO REINSTATE**

Plaintiff's second claim is that defendant breached plaintiff's reinstatement rights stated in the Plan.

20

It is uncontested that under the Plan, plaintiff was entitled, upon expiration of Short Term Disability benefits,

> ...to a maximum reinstatement period of one (1) year to any job the Employee is qualified to perform, provided medical evidence is submitted to the Claim Administrator to substantiate that the Employee is able to return to work.

Dk. 42, Exh. E, p. 12.  As noted earlier, an internal job search document was placed in plaintiff's file on June 23, 2003 but was removed on January 4, 2004, a day before his short term disability expired.  Thus no evidence shows that an internal job search was made for plaintiff during any part of the year immediately following expiration of his short term disability benefits.  Plaintiff was not reinstated to any position with defendant within one year thereafter.

Defendant counters that plaintiff failed to exhaust his administrative remedies regarding this claim.  The exhaustion of administrative remedies is a prerequisite to claims for benefits under ERISA. *See generally Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999); *Karls v. Texaco, Inc.*, 139 Fed. Appx. 29, 31, 2005 WL 1189828, *1 (10th Cir. 2005).

Plaintiff does not dispute that exhaustion of this claim is required.  Instead, he first alleges that he timely raised this claim below in

his written appeal of the denial of his benefits.  In that appeal, plaintiff alleged error in defendant's "inability to place me in another position."  That appeal states, in pertinent part:

> Due to injuries received in 5/14/02 accident, my inability to continue doing my job and the inability of SBC to place me in another position I was terminated.

Dk. 42, Exh. F. p. 1. No other language is alleged to be relevant.

The court finds that the above phrase about "another position," when read in context, refers solely to events occurring before plaintiff's original termination.  Its plain language alleges that plaintiff was terminated due in part to defendant's inability to place him in another position.  The language cannot reasonably be read to relate to plaintiff's reinstatement rights, which are triggered, if at all, only at the expiration of his short term disability, *i.e.*, 52 weeks after his termination.  Plaintiff's first assertion of a right to reinstatement benefits under the Plan, as shown by the record, is not in his appeal but in plaintiff's federal complaint filed August 5, 2005. Plaintiff has thus failed to show that he exhausted his claim to reinstatement rights under the Plan.

Plaintiff next asserts that his failure to exhaust was because he was unaware of his reinstatement rights as a result of defendant's breach

of its duty to inform him of them.  Dk. 50, p. 9-11.  The plain language of the Plan states that an employee shall be entitled, upon expiration of his short-term disability benefits, "...to a maximum reinstatement period of one (1) year to any job the Employee is qualified to perform, provided medical evidence is submitted to the Claim Administrator to substantiate that the Employee is able to return to work." Dk. 42, Exh. E, p. 12.  The Summary Plan Description is equally clear in stating:  "Following expiration of STD benefits, reinstatement within one year to an available company job you are qualified to perform, will be provided if medical evidence is submitted to substantiate that you are able to return to work."  Dk. 40, Exh. L, p. DI 6. Defendant does not assert that plaintiff had to do anything other than what the Plan expressly required before becoming eligible for the reinstatement right. The Plan language, made known to plaintiff, is sufficient to inform him of the existence of his right to reinstatement and the manner in which it must be asserted.  Thus no injustice has been shown in finding that plaintiff should have raised this claim below, and no exceptions to the exhaustion doctrine have been shown.  Accordingly, the court cannot reach the merits of this claim.[4]

---

[4]Accordingly, the court need not address plaintiff's assertion that the scope of review for this claim is de novo.  *See* Dk. 42, p. 14.

To the extent plaintiff seeks to bring a separate claim that defendant breached its fiduciary duty to disclose information relative to plaintiff's right to reinstatement, that claim is not included in the pretrial order[5] and shall not be addressed.

**Offset**

Given the findings above, the court finds it unnecessary to address defendant's claim that plaintiff's long term disability benefits are subject to an offset.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Dk. 41) is denied, and that defendant's motion for summary judgment (Dk. 38) is granted.

Dated this 2lst day of June, 2007, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

[5]The pretrial order (Dk. 32) states the nature of the case as one "for benefits" under ERISA. Dk. 32, p. 1. It contains plaintiff's factual contention that plaintiff was entitled to be reinstated within one year but instead was removed from the system, Dk. 32, p. 4, plaintiff's legal theory that plaintiff was not reinstated to any job he could perform at SBC within one year of the expiration of his short-term disability benefits, *Id.*, p. 6, and the essential elements of that second theory of recovery, *Id.*, p. 7. Nowhere is the term "fiduciary duty" mentioned nor are its essential elements listed. In short, nothing in the pretrial order puts defendant on notice that any claim is made for breach of fiduciary duty.